UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

HUMMINGBIRD USA INC.,

       Plaintiff,

  -v-                                         No. 06 CV 7672 (LTS) (GWG)

TEXAS GUARANTEED STUDENT LOAN
CORPORATION,

       Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff Hummingbird USA, Inc. ("Plaintiff" or "Hummingbird") brings this action seeking a declaratory judgment regarding certain provisions of its various service contracts with Defendant Texas Guaranteed Student Loan Corporation ("Defendant" or "TG"). Defendant asserts counterclaims for breach of contract, negligence, conversion and breaches of Plaintiff's duties arising from a purported bailment relationship between the two parties. The Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1332.

       Defendant moves for partial summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure on Plaintiff's declaratory judgment claim and Defendant's breach of contract claims. Plaintiff cross-moves for summary judgment in its favor on its claim for a declaratory judgment and on all of Defendant's counterclaims pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. For the reasons explained below, Plaintiff's motion for summary judgment on its declaratory judgment claim is granted in part and denied in part, Plaintiff's motion

for summary judgment is denied in all other respects, and Defendant's motion is denied in its entirety.

BACKGROUND

The following material facts are undisputed unless otherwise indicated. In December 2005, Defendant, a non-profit corporation that guarantees the payment of loans for defaulting student borrowers, contracted with Plaintiff, a content management software provider, to design and install a Records and Information Management System for Defendant. The agreement was comprised of three relevant contracts: the Master Terms and Conditions ("Master Terms"), the Software License, Support and Maintenance Agreement ("License Agreement") and a form of Confidentiality Agreement that was executed by individuals working on the project as well as by Plaintiff.

The confidentiality provisions of the Master Terms and License Agreement, as well as those of the Confidentiality Agreements, mandated that Plaintiff's employees not disclose or reproduce any of Defendant's confidential borrower information without Defendant's authorization (Master Terms ¶ 6 and License Agreement ¶ 7.1(a)). These provisions also mandated that all confidential information be returned to Defendant upon termination of the agreement (License Agreement ¶ 7.4(d) and Master Terms ¶ 6).

The Master Terms and License Agreement further provided that Plaintiff would be "fully liable" for any breaches of the Confidentiality Agreements by Plaintiff's representatives (including subcontractors and, presumably, employees) (Master Terms ¶ 6 and License Agreement

¶ 7.4).[1]  However, the Master Terms and the License Agreement also each contained a provision limiting the Plaintiff's liability to direct damages for any contract or tort claim arising out of the agreement, and further limiting the amount recoverable in connection with such direct damages to the amount of payments made to Plaintiff by Defendant for Plaintiff's services –  in this case, $239,242.  (Master Terms ¶ 9 and License Agreement ¶ 8.2; referred to hereinafter as the "Liability Limitation Provisions").[2]

The Liability Limitation Provisions also provided that Plaintiff was relieved of any liability with respect to consequential damages arising from breaches of the agreement, torts arising from the agreement, or lost data (see supra n.2).  The Confidentiality Agreement provides that "All files, records...and similar items relating to [TG's] business...shall not be removed under any circumstances from the premises where [TG's] work is being carried out without the prior approval of [the] immediate [TG supervisor]. . ." (Conf. Agreement ¶ 13).

---

[1] "Hummingbird acknowledges and agrees that its representatives shall be required to sign CUSTOMER's confidentiality and non-disclosure agreements prior to commencing services hereunder and Hummingbird shall be fully liable for its Representatives' (including approved subcontractors') breach of any such agreement."  Master Terms ¶ 6.  The corresponding provision of the License Agreement (¶ 7.4) does not differ in any material respect.

[2] "Hummingbird's liability in contract, tort or otherwise arising out of or in connection with this Agreement is limited to Customer's actual DIRECT damages, not to exceed the amount of the payments made to Hummingbird by Customer under this Agreement or any Software License Support and Maintenance Agreement entered at or near the time of execution of this Agreement.  In no event shall Hummingbird be liable for any loss of profits, loss of business, or loss of data, or for special, incidental, indirect or consequential damages HOWSOEVER ARISING even if Hummingbird has been advised of the possibility of such damages."  Master Terms ¶ 9.  The corresponding provision in the License Agreement (¶ 8.2) does not differ in any material respect, except it begins with the clause: "NOTWITHSTANDING ANY PROVISION TO THE CONTRARY. . ."

During a kickoff meeting with Defendant in January 2006, a Hummingbird employee ("the Employee" or "the Hummingbird Employee"), met with TG engineers and asked for TG's data so he could "clean it up."  TG agreed to provide him with the data but it is disputed as to whether the employee had authorization, pursuant to the Confidentiality Agreement, to use this data outside of Hummingbird's premises, which were located in Tallahassee, Florida.  Plaintiff proffers a declaration wherein the Employee avers that he made it clear that he did not work in a fixed location and would be traveling while working on TG's projects.  The Employee avers that TG assented to the Employee's use of the data while traveling and that its consent was demonstrated by TG's provision of the data to the Employee in a portable form (i.e., on a DVD) and later via electronic file transfer protocol to a location outside Hummingbird's work premises.  Defendant counterproffers a declaration disputing the Employee's recollection that TG agreed to his use of the data while traveling.

On or about May 24, 2006, the Employee lost a piece of computer equipment ("the Hard Drive") that contained the data the Employee had obtained from TG, including names and social security numbers of 1.8 million of TG's borrowers, in a Detroit airport.  The information on the Hard Drive was protected by various security measures that made the data difficult to access. After Hummingbird notified TG of the loss, TG took steps to notify its borrowers through various measures, including mailings and the creation of a hotline and a website.  TG also hired outside counsel to help TG comply with the notification measures TG asserts it believed it was required to undertake under federal statutes and regulations.   As of the briefing of these motions, there had been no reported cases of identity theft involving anyone whose data was on the lost Hard Drive, and the Court has not been notified of any subsequent such reports.

On July 13, 2006, TG demanded $1,132,689.15 from Hummingbird, representing the damages TG asserted were owed to it as a result of the notification procedures it undertook after the Hard Drive was lost.  On September 22, 2006, Hummingbird commenced this action, seeking a declaration that the Liability Limitation Provisions control, and that Defendant's notification costs did not constitute direct damages within the meaning of the contracts.  Defendant filed counterclaims, and this summary judgment motion practice followed.

## DISCUSSION

Summary Judgment

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The facts will be viewed in the light most favorable to the party opposing the motion and all reasonable inferences drawn in the non-movant's favor.  Consarc Corp. v. Marine Midland Bank., N.A., 996 F.2d 568, 572 (2d Cir. 1993).  In opposing a motion for summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  No genuine issue of fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).

Plaintiff's Motion

Plaintiff seeks a declaration that the Liability Limitation Provisions either preclude recovery of all of the expenses sought by Defendant in this action, because the amounts sought all represent consequential rather than direct damages, or in the alternative, a declaration that the Liability Limitation Provisions limit Defendant to recovery of direct damages only, up to an amount equal to that paid by Defendant to Plaintiff under the contracts.  Defendant contends that the damages sought are direct within the meaning of the contracts, and that the Liability Limitation Provisions do not operate to constrain Hummingbird's undertaking in the Confidentiality Agreements to be "fully liable" for its employees' breaches thereof.  Plaintiff's motion for summary judgment on its declaratory judgment claim is granted in part and denied in part.

The choice of law provision in the Master Terms provides that, all claims in this matter will be governed by Texas state law (¶ 13).  When construing a written contract, "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument, and to achieve that objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless."  Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  The Court must review the entire agreement, taking no single provision alone.  Id.  The Court may examine all the documents relating to the same transaction as if they were part of a single unified instrument in order to ascertain the parties' intent.  Ft. Worth Indep. Sch. Dist. v. City of Ft. Worth, 22 S.W.3d 831, 840 (Tex. 2000).  However, the Court cannot by doing so render one term meaningless or surplusage.  King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 192-193 (Tex. 2002).  Parol evidence may be introduced only if there is ambiguity in the contract; otherwise a contract may be interpreted as a

matter of law.  See Coker, 650 S.W.2d at 393.

In the case at hand, the relevant provisions of the contracts are unambiguous and thus can be interpreted as a matter of law.

The Liability Limitation Provisions, on the one hand, and the paragraphs of the Master Terms and License Agreements providing that Hummingbird would be "fully liable" for its employees' and representatives' breaches of the Confidentiality Agreements, on the other, function differently and serve different purposes.  Thus, they neither conflict with each other nor render the contracts ambiguous.  The Liability Limitation Provisions specifically, and exclusively, address the circumstances under which Hummingbird is liable for damages for breach of the contracts or torts arising therefrom and set a cap on the amount that TG can recover in the event of a compensable breach or tort.  The paragraphs acknowledging that Hummingbird would be "fully liable," by contrast, address Hummingbird's responsibility for the acts of its agents, negating, for instance, defenses based on independent contractor status or employee disobedience.  The latter provisions thus neither contradict nor supersede the Liability Limitation Provisions.

Hummingbird is therefore entitled as a matter of law to a declaration that its liability, if any, to TG in this action is restricted by the Liability Limitation Provisions.

Summary judgment must be denied, however, to the extent Hummingbird seeks a declaration that TG's claimed damages are all consequential and thus non-compensable and to the extent it seeks dismissal of TG's counterclaims.  There is a genuine issue of material fact as to whether the damages suffered by TG constituted direct or consequential damages, because it is unclear whether TG's response to the loss of the Hard Drive was necessary, and/or appropriate in scope in light of the contract provisions, the relevant statutes and regulations and the security

measures that were in place on the hard drive at the time it was lost. See 15 U.S.C. §§ 6801(b); 12 C.F.R. Pt. 364 App. B; Arthur Anderson & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997); Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 163 (Tex. 1992).

With respect to Defendant's negligence counterclaim, a reasonable jury could find that Hummingbird through its employee was negligent in its handling of the data on the Hard Drive.  Therefore, plaintiff's motion for summary judgment on Defendant's negligence counterclaim is denied.  See, Kroger Co. v. Elwood 197 S.W.3d 793, 794 (Tex. 2006).

Plaintiff's summary judgment motion is also denied as to Defendant's bailment counterclaim, because there are genuine issues of material fact as to whether the Hummingbird Employee was authorized to travel with the data, and thus as to whether the terms of any implied or express bailment was breached.  Nor can the Court determine on this record as a matter of law whether any tort claims arise from that alleged contract breach.  See Cessna Aircraft Co. v. Aircraft Network L.L.C., 213 S.W.3d 455, 462 (Tex. App. 2006); W.E. Stephens Mfg. Co., 225 S.W.3d 77, 80-81 (Tex. App. 2005); Sears, Roebuck & Co. v. Wilson, 963 S.W.2d 166, 169 (Tex. App. 1998).

Genuine issues of material fact, including issues as to whether the Hummingbird Employee was authorized to travel with the data, also preclude summary judgment as to Defendant's conversion and breach of contract counterclaims.  See e.g., Robinson v.Nat'l Autotech, Inc., 117 S.W.3d 37, 39-40 (Tex. App. 2003).  See also Thomas v. McNair, 882 S.W.2d 870 (Tex. App. 1994, no writ); Lone Star Ford, Inc. v. Hill, 879 S.W.2d 116 (Tex. App. 1994); Dolenz v. Nat'l Bank of Texas at Fort Worth, 649 S.W.2d 368 (Tex. App. 1983); Rodriguez v. Ortegon, 616 S.W.2d 946 (Tex. Civ. App. 1981); Restatement (Second) of Torts §222A (1965).

Defendant's Motion

   For substantially the same reasons, Defendant's motion for summary judgment as to Plaintiff's declaratory judgment claim and to Defendant's breach of contract counterclaim is denied.

Court's Rule 56(d)(1) Findings

   Under the Federal Rules of Civil Procedure, even if summary judgment is not granted on a whole action the Court should, to the extent possible, determine what material facts are not genuinely at issue by examining the pleadings and evidence before it.  Fed. R. Civ. P. 56(d)(1).

   Having reviewed thoroughly the parties' submissions and arguments in connection with this motion practice, the Court finds that the following facts are not genuinely at issue.  These facts must, accordingly, be treated as established:

1. In order to access TG's data on the lost hard drive, a person would have to know the specific computer programs being used in connection with the data and at least three different passwords.  (Britt Decl. ¶ 5.)

2. The person would also need to know the specific version of the Server Domain Controller that was being used to access the database and the password for that controller.  (Id.)

3. In order to link the data contained in the hard drive together into an understandable and usable format, a person would have to know the particular software used to assemble the data.  The data contained on the hard drive was split into approximately 30 tables.  (Id.)

4. An understanding of TG's database would therefore be required in order to make use of the data.  (Id.)

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part and Defendant's motion for summary judgment is denied in all respects.

The parties are directed to meet promptly with Magistrate Judge Gorenstein to discuss settlement and, if necessary, address any outstanding pre-trial issues and schedule a final pre-trial conference before the undersigned. This Memorandum Opinion and Order resolves Docket Entries 42 and 43.

SO ORDERED.

Dated: New York, New York
July 25, 2008

LAURA TAYLOR SWAIN
United States District Judge